IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAWRENCE F. ONYEUGBO, I | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:21-cv-3206-S (BT) |
| | § | |
| CITIGROUP IRVING, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lawrence F. Onyeugbo, I, filed this *pro se* civil action alleging employment-discrimination and retaliation claims against Defendant Citigroup Inc. under Title VII of the Civil Rights Act of 1964. ECF Nos. 3, 8, 13. Because he is proceeding *in forma pauperis*, the Court withheld service of his complaint pending judicial screening. For the following reasons, the Court should DISMISS Plaintiff's claims for failure to state a claim upon which relief can be granted.

## Background

Plaintiff, a black male, claims that Citigroup failed to rehire him because of his race and as retaliation for protected activity, all in violation of Title VII. *See generally* ECF No. 3 at 2 (charge of discrimination).

In his pleadings,[1] Plaintiff alleges as follows:

---

[1] Plaintiff has filed an original and amended complaint. ECF Nos. 3, 8. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346

Plaintiff worked for Citigroup from September 2008 to July 2009 as a "client/collection rep." ECF No. 13 at 1. He was terminated "without misconduct" in July 2009 and, that same year, he filed a charge for wrongful discrimination with the EEOC. ECF No. 13 at 1. In March 2010, he began an arbitration with Citigroup related to his EEOC charge. ECF No. 13 at 1. Plaintiff decided to "cancel" the arbitration, settled with Citigroup, and dismissed his charge with the EEOC. ECF No. 13 at 1.

After employment with other companies, in 2011, Plaintiff contacted Citigroup to "modify his settlement agreement due to unemployment and subsequent foreseeable hardships." ECF No. 13 at 1. Plaintiff was told to apply for positions with Citigroup. ECF No. 13 at 1-2.

Since then, Plaintiff has applied to several local and national opportunities with Citigroup, but he has not been hired. ECF No. 13 at 2. He specifically references a rejected application in October 2019. ECF No. 13 at 2. Plaintiff feels that—given his experience as a former employee and "overwhelming qualifications"—Citigroup's repeated failures to hire him are "tantamount to excessive retaliatory and race discriminatory action." ECF No. 13 at 2.

---

(5th Cir. 1994). Plaintiff's amended complaint does not reference or incorporate the original, so his amended complaint, ECF No. 8, is the live pleading. Nevertheless, the Court also considered the original complaint and its attachments for screening purposes. Plaintiff also responded to a Magistrate Judge Questionnaire (MJQ). Plaintiff's answers to the questions posed by the Court constitute an amendment to the complaint. *See Macias v. Raul A. (Unknown), Badge No. 153,* 23 F.3d 94, 97 (5th Cir. 1994).

As for the events underlying this lawsuit, Plaintiff claims that, on September 17, 2021, he was in the process of onboarding for a night shift "HR operations opportunity" with Citigroup at its Las Colinas facility in Irving, Texas. ECF No. 3 at 1; ECF No. 13 at 2-3. He completed the I-9 and application forms at the office of Adecco, which is Citigroup's "operations agency." ECF No. 3 at 1; ECF No. 13 at 2.

But Citigroup "singled" Plaintiff out and refused to rehire him "due to a policy." ECF No. 13 at 2. Citigroup did not give any reason for the decision to Plaintiff's recruiter, but it did note the "not hirable status on [Plaintiff's] file." ECF No. 3 at 1. Citigroup refused to rehire Plaintiff even though was "a former employee in good standing." ECF No. 8 at 4.

Plaintiff was the only candidate that participated in the onboarding process that "was not processed for clearance on the project." ECF No. 13 at 3. Plaintiff specifically recalls Citigroup "processing" at least two "Asian women" for the position that he sought. ECF No. 13 at 4.

**Legal Standard**

Plaintiff's complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), pursuant to which a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic*

3

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And, "[a]lthough pleadings filed *pro se* are generally held to less stringent standards than those drafted by lawyers, *pro se* litigants must still reasonably comply with procedural rules." *Miller v. Lowe's Home Ctrs. Inc.*, 184 F. App'x 386, 389 (5th Cir. 2006) (per curiam) (citing *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995)).

## Analysis

Plaintiff claims that Citigroup failed to rehire him in 2021 because of his race in violation of Title VII and as retaliation for prior protected activity, also in violation of Title VII. ECF No. 13 at 3-4. But, as explained below, Plaintiff fails to allege a plausible race-discrimination or retaliation claim under Title VII.

1. **Plaintiff fails to state a plausible Title VII race-discrimination claim.**

Title VII prohibits an employer from discriminating against any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To maintain a claim of disparate treatment discrimination, a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

4

(1973). *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).

Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination with allegations and proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

At the pleading stage, however, the Court's analysis of the Title VII claims is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an 'adverse employment action,' (2) taken against a plaintiff 'because of [his] protected status.'" *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)) (emphasis in original omitted).

But when the plaintiff—as is the case here—will ultimately have to satisfy the *McDonnell Douglas* framework, "it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of a disparate treatment claim." *Id.* (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470-71 (5th Cir. 2016) (considering whether the plaintiff

5

pleaded facts suggesting that the employer hired an applicant who was "similarly situated" to the plaintiff or "less qualified" than the plaintiff in accordance with the *McDonnell Douglas* framework).

Applying that framework here, Plaintiff alleges that Citigroup said that it refused to hire him because of a policy—the details of which he does not provide. Plaintiff alleges that this policy was pretextual, that he was in good standing with the company, and that Citigroup's real reason for not re-hiring him was because of his race.

But he provides no facts to "nudge [that] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Plaintiff does not plead facts that show direct evidence of discrimination. Instead, he relies on the circumstances to make out a plausible discrimination claim—namely, that he was qualified for the position, that he was not hired, and that others outside of his protected class were hired.

The Court infers that Plaintiff, given his prior HR operations experience and his allegation that Adecco already hired him subject to clearance from Citigroup, was qualified for the position. *See* ECF No. 13 at 4. But he still fails to allege facts that would allow the Court to reasonably infer that Citigroup discriminated against him because of his race. *See, e.g.*, *Thorton v. Dall. ISD*, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014) ("While a plaintiff is not required to plead a *prima facie* case based on discrimination and retaliation at the pleading stage for purposes of Rules 8 and 12(b)(6), he must set forth allegations that would allow the court to

6

reasonably infer that his employer or employment agency discriminated against him in violation of Title VII and took the alleged adverse employment action because he engaged in protected activity.") (citation omitted).

Notably, Plaintiff fails to plead with any specificity that he was treated less favorably than others similarly situated outside of his protected class. While Plaintiff claims that two "Asian women" were "processed"[2] after onboarding, he provides no other facts about them such as their qualifications or whether they were subject to the policy pursuant to which Citigroup refused to rehire Plaintiff. *See*, *e.g.*, *Olivarez v. T-Mobile USA Inc.*, 997 F.3d 595, 600 (5th Cir. 2021).

And while the Court recognizes that the question of whether a comparator is really "'similarly situated'" is an inquiry "more suited to the summary judgment phase," *Cicalese,* 924 F.3d at 768, at the pleading stage the plaintiff must still "allege sufficient facts to allow the court to determine whether it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently." *Davis v. Metro North Commuter R.R.*, 2022 WL 2223018, at *7 (S.D.N.Y. June 21, 2022) (citing *Rosario v. Town of Mount Kisco,* 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018)); *see also Benford v. Milwaukee Electric Tool Corp.*, 2021 WL 735642, at *7 (N.D. Miss. Feb. 25, 2021) (noting that, as long as the plaintiff pleads facts which "plausibly allege" the existence of a satisfactory

---

[2] The Court construes "processed" in this context to mean "hired." If Citigroup did not hire these proposed comparators, the reasoning for the Court's recommendation to dismiss the race-discrimination claim applies with even more force.

7

comparator, the claim is sufficient) (citing *Gunaldo v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2020 WL 4584186, at *8-9 (E.D. La. Aug. 10, 2020)).

As explained, given the lack of detail regarding the comparators, Plaintiff fails to "plausibly allege" the existence of satisfactory comparators. *Benford*, 2021 WL 735642, at *7. And there is nothing else in Plaintiff's complaint that would allow the Court to reasonably infer that Citigroup did not rehire him because of his race. He therefore fails to state a claim. *See, e.g.*, *Olivarez,* 997 F.3d at 600. ("Notably, there is no allegation that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as Olivarez received more favorable treatment. And comparator allegations aside, the complaint presents no other facts sufficient to "nudge[] [the] claims across the line from conceivable to plausible.") (citing *Twombly*, 550 U.S. at 547); *see also Chhim*, 836 F.3d at 471 ("In sum Chhim's complaint 'did not allege any facts direct or circumstantial, that would suggest [the University's] actions were based on [Chhim's] race or national origin or that [the University] treated similarly situated [applicants] of other races or national origin more favorably.") (citing *Raj*, 714 F.3d at 331); *Broussard v. Fort Bend Indep. Sch. Dist.*, 2022 WL 19505, at *3 (S.D. Tex. Jan. 3, 2022) ("Also absent from the Complaint are any factual allegations indicating that FBISD terminated Broussard's employment *because of* her race. Broussard's unsupported suspicion that racial discrimination was the root of her termination will not suffice.").

8

In sum, Plaintiff fails to state a plausible race discrimination claim under Title VII, and that claim should be dismissed with prejudice.

**2. Plaintiff fails to allege a plausible retaliation claim under Title VII.**

Plaintiff also alleges that, between 2009 and 2010, he filed an EEOC charge against Citigroup and commenced "arbitration for reinstatement" with the company. ECF No. 13 at 3-4. He speculates that he was not rehired in 2021 in retaliation for that conduct. ECF No. 13 at 3-4.

"To establish Title VII retaliation, [Plaintiff] must show that 1) [he] engaged in protected activity, 2) [he] suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As with the disparate treatment claim, Plaintiff only needs to "plausibly allege facts going to the ultimate elements of the claim . . . " *Cicalese*, 924 F.3d at 768.

Applying those standards, first, Plaintiff alleges that he engaged in protected activity. "'Protected activity' is defined as opposition to any practice made unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Standley v. Rogers*, 202 F.Supp.3d 655, 668 (W.D. Tex. 2016) (citations omitted). "The filing of an EEOC complaint is clearly a protected activity within the meaning of the statute." *See Hockmand v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004)

9

(citations omitted). And, assuming that the arbitration proceedings were related to the EEOC charge, they would also qualify as a protected activity. *See* 42 U.S.C. § 2000e-3(a).

Next, Plaintiff suffered an adverse employment action because Citigroup did not hire him even though he applied for the job. *See*, *e.g.*, *Singh v. Excel Sec. Corp.*, 2021 WL 1199469, at *8 (S.D.N.Y. Mar. 8, 2021) ("A failure to hire is an adverse employment action.") (citing *Hughes v. Twenty-First Century Fox, Inc.*, 304 F.Supp.3d 429, 445 (S.D.N.Y. 2018)).

But Plaintiff has failed to plausibly allege a causal link between the adverse employment action and his protected activity. "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). This is a less demanding standard at the *prima facie* stage. Instead, "[a]t the prima facie case [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Prof'l Const. Servs., Inc.*, 938 F.3d 236, 243. (5th Cir. 2019).

Here, however, the time gap—more than a decade—between the allegedly protected activity in 2009 and 2010 and the adverse employment action in 2021 is too significant to permit a reasonable inference of causation, which in turn makes the retaliation claim implausible because there are no other allegations tying the adverse employment action to the protected activity. *See, e.g.*, *Wright*, 990 F.3d at 433 ("By Wright's own account, Merchant knew about the claims underlying

10

Wright's 2016 lawsuit in April 2016. Yet Wright was not suspended until July 2018, or terminated until August 2018, more than two years later. Even given Merchant's awareness of Wright's 2016 lawsuit, this two-year lapse is indeed too remote to permit a reasonable inference of causation.") (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (holding that an adverse action taken twenty months after employer became aware of protected activity "suggests, by itself, no causality at all"); *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013) (affirming dismissal of retaliation claim because a three-year lapse, at best, between the protected activity and the adverse employment action is too attenuated temporally to state a claim for relief, even if [plaintiff's supervisor was aware of the activity).

Thus, Plaintiff's retaliation claim should also be dismissed with prejudice.

**Leave to Amend**

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. But "granting leave to amend is not required if the plaintiff has already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank*, 2018 WL 4290791, at *4 (N.D. Tex. Aug.

11

23, 2018) (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017), *rec. accepted* 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018).

Here, Plaintiff has submitted an amended complaint and has also responded to an MJQ. He has had ample opportunity to plead his best case, so his claims should be dismissed with prejudice. *See, e.g.*, *Duke v. Dallas County*, 2021 WL 3525106 (N.D. Tex. June 25, 2021), *rec. accepted* 2021 WL 3204565 (N.D. Tex. July 29, 2021) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Cobb v. Simmons*, 373 F. App'x 469, 470 (5th Cir. 2010)).

Nevertheless, if Plaintiff believes that he has not yet stated his best case as to any claim discussed above—which means, after considering the legal standards and analysis provided above, Plaintiff believes he knows of more facts that he can assert to allege a plausible claim—the time to file objections (further explained below) allows him an opportunity to explain how he would cure the deficiencies identified above and thus show the Court that his case should not be dismissed with prejudice at this time and that the Court should instead grant him leave to amend his claims. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects.") (citing *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016)). If Plaintiff does not provide a copy of the amended complaint or explain how the defects could be cured, the Court should deny leave

12

to amend. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment").

## Conclusion

The Court should DISMISS Plaintiff's complaint with prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B).

SO RECOMMENDED

Signed March 20, 2023.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).